Frank J. TAYLOR, Plaintiff,

v.

UNITED STATES of America
INTERNAL REVENUE
SERVICE, Defendant.

No. C 93–0180.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Feb. 1, 1996.

Marlyn S. Jensen, Osceola, Iowa, for Plaintiff Frank J. Taylor.

Gerald A. Role, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant IRS.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND................................1016

II. LEGAL ANALYSIS ..............................................1017
 A. Applicable Standards .................................1017
 B. The "Bivens" Claim ..................................1019
 C. The Constitutionality Of 26 U.S.C. § 6103 ...........1019
 1. The statute in question .........................1019
 2. The appropriate constitutionality analysis ......1021
 3. The constitutionality of § 6103 ................1023

III. CONCLUSION..................................................1025

BENNETT, District Judge.

Following summary judgment in its favor on a number of plaintiff's claims relating to disclosure of tax return information to state revenue officials, the defendant has moved to dismiss the remaining claims it failed to challenge. Plaintiff's remaining claims assert a *"Bivens"* action against the defendant and challenge the constitutionality of 26 U.S.C. § 6103, which authorizes the federal Internal Revenue Service to disclose information it has obtained from and about taxpayers to state revenue services under certain conditions and through specified procedures. Plaintiff asserts that the statute violates his constitutional right to financial privacy.

### I. INTRODUCTION AND BACKGROUND

Plaintiff Frank J. Taylor filed his *pro se* complaint in this matter on March 11, 1993, as an adversary complaint in his Chapter 7 bankruptcy filed on September 4, 1987. Mr. Taylor is now represented by counsel. The defendant is the United States of America "acting as" the Internal Revenue Service (IRS). The court has already considered extensively the procedural and factual background to this litigation in its prior ruling, entered September 27, 1995, granting the IRS's motion for summary judgment on the two claims on which the IRS asserted its entitlement to such judgment. *See Taylor v. United States,* 186 B.R. 441, 443–45 & 446–49 (N.D.Iowa 1995). The court concluded that the IRS had not, however, moved for summary judgment on Mr. Taylor's *"Bivens"* claim, although the court did indicate its doubt that Mr. Taylor could properly assert such a claim, nor had the IRS moved for summary judgment on Mr. Taylor's claim that 26 U.S.C. § 6103, which imposes certain

confidentiality and disclosure limitations on the IRS, is unconstitutional, even though the IRS had labeled that claim "frivolous." *Id.* at 448.

The IRS soon rectified its oversight of these additional claims by moving to dismiss them on November 3, 1995. The IRS contends that Mr. Taylor cannot mount a *"Bivens"* claim against the United States or one of its agencies, and that, had he named any individual defendants, they would be entitled to qualified immunity. The IRS contends further that 26 U.S.C. § 6103 is not unconstitutional, because no provision of the U.S. Constitution imposes a confidentiality requirement on information collected by the IRS and Congress's protections and provisions for disclosure are reasonable and founded on legitimate governmental policies.

Plaintiff Frank J. Taylor belatedly resisted the IRS's motion to dismiss on December 26, 1995, but only after the court directed him to do so or face dismissal of this action for want of prosecution. In his resistance to the motion to dismiss, Mr. Taylor contends that he is unable to name individual IRS officials against whom his *"Bivens"* claim might properly be asserted, because such information as to the identity of the actors responsible for misconduct toward him is in the exclusive control of the defendant agency. He therefore contends that the court should not dismiss his *"Bivens"* action without first allowing extensive discovery. As to his challenge to the constitutionality of § 6103, Mr. Taylor reiterated his principal argument, previously raised in his complaint and resistance to the motion for summary judgment, where constitutionality was not in fact at issue, that the statute violates a constitutionally protected, fundamental expectation of privacy, which includes financial matters. Mr. Taylor also offers some rather nebulous assertions that the statute, which permits sharing of information between federal and state revenue officials, violates principles of federalism and state sovereignty.

This matter is now fully submitted. Therefore, the court turns to identification of the standards applicable to this motion to dismiss, followed by determination of the proper disposition of the motion to dismiss as to each of Mr. Taylor's remaining claims.

## II. LEGAL ANALYSIS

### A. Applicable Standards

Although the United States has stated that its motion to dismiss is brought "pursuant to Rule 12, Fed.R.Civ.P.," it has not identified which Rule 12 subsection or ground in fact provides the authority for its motion. However, it appears that a "motion to dismiss" a case more than two years old, in which partial summary judgment has already been granted, is most likely a motion for judgment on the pleadings pursuant to *Fed.R.Civ.P.* 12(c), not a motion pursuant to *Fed.R.Civ.P.* 12(b)(6), which must be filed before an answer is made. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) ("Technically ... a Rule 12(b)(6) motion cannot be filed after an answer has been submitted."). Also, Rule 12(h)(2) states that the defense of failure to state a claim upon which relief can be granted, the IRS's apparent ground for dismissal of the constitutionality challenge, may be advanced in a 12(c) motion. *Id.; see also Kornblum v. St. Louis County, Mo.,* 48 F.3d 1031 (8th Cir.1995) (Rule 12(h)(2) provides that failure to state a claim may be asserted in a 12(c) motion, or in the answer, or at trial). Furthermore, defenses of immunity, similar to that asserted here, may properly be brought pursuant to a motion under Rule 12(c). *See, e.g., Jones v. Moore,* 986 F.2d 251, 252 (8th Cir.1993) (absolute immunity may be proper ground for Rule 12(c) judgment on the pleadings); *Ansley v. Heinrich,* 925 F.2d 1339, 1346 (11th Cir.1991) (qualified immunity is a question of law that may be asserted in pre-answer motion pursuant to Rule 12(b)(6), in motion for judgment on the pleadings pursuant to Rule 12(c), or on a summary judgment motion pursuant to Rule 56).

The nicety of which subsection of Rule 12 provides the ground for the United States's motion to dismiss is, perhaps, "purely formal," at least as to "failure to state a claim," because the Eighth Circuit Court of Appeals reviews the grant or denial of a motion to dismiss on this ground pursuant to Rule 12(c) against the same standards applicable to a

motion pursuant to Rule 12(b)(6). *Westcott,* 901 F.2d at 1488. These standards were briefly stated in *Westcott:*

> It is settled in this circuit that "[w]hether a complaint states a cause of action is a question of law which we review on appeal *de novo.*" We assume that well-pleaded factual allegations in the complaint are true "and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." We do not, however, blindly accept the legal conclusions drawn by the pleader from the facts. After so construing the complaint, we should affirm the granting of a 12(b)(6) motion [and hence a 12(c) motion to dismiss for failure to state a claim] only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."

*Westcott,* 901 F.2d at 1488 (internal citations omitted); *see also National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 428 (8th Cir.) (review of judgment on the pleadings is *de novo,* citing *Westcott,* and court must accept as true all facts pled by the non-moving party, and grant all reasonable inferences from the pleadings in the non-moving party's favor), *cert. denied,* ——— U.S. ———, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993).

 Perhaps of more concern when the litigation is so well-advanced before a motion to dismiss is made is the question of whether consideration of matters outside of the pleadings is suggested or undertaken, requiring conversion of the motion into one for summary judgment pursuant to *Fed.R.Civ.P.* 56, with concomitant requirements of notice to the parties of such a conversion. *Fed. R.Civ.P.* 12(c). Even where matters outside of the pleadings are presented to the court, however, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss." *Skyberg v. United Food and Commercial Workers Int'l Union, AFL–CIO,* 5 F.3d 297, 302 n. 2 (8th Cir.1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id.*

 Here, the parties have presented and argued the questions raised by defendant's motion to dismiss purely as questions of law. *See National Car Rental,* 991 F.2d at 428 (stating that "judgment on the pleadings is not appropriate unless the moving party has 'clearly establishe[d] that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law,'" quoting, where indicated, *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters,* 627 F.2d 853, 855 (8th Cir.1980)). No party has submitted any documents in support of its arguments, nor asserted any issues of material fact as precluding judgment on the pleadings.[1] Nor can the court find anything in Mr. Taylor's constitutional challenge to 26 U.S.C. § 6103 that might require the court to look beyond the pleadings. The court will therefore dispose of the present motion solely in the posture of a Rule 12(c) motion for judgment on the pleadings, rather than in the posture of a converted motion for summary judgment. *Skyberg,* 5 F.3d at 302 n. 2.

---

**1.** *This conclusion is notwithstanding Mr. Taylor's assertion that he should be allowed extensive discovery to identify individual IRS agents against whom he can properly assert "Bivens" claims. In the context of claims pursuant to 42 U.S.C. § 1983 against state actors, the analogue of a "Bivens" action against federal agents, the Eighth Circuit Court of Appeals has held that where a plaintiff is unable to ascertain the identity of some of the defendants, the plaintiff may sue "John Doe" defendants to preserve a cause of action, but where the plaintiff does not do so, the district court may properly dismiss later claims brought against such a defendant that arise from the same circumstances. Roberts v. Dillon, 15 F.3d 113, 115 (8th Cir.1994). Mr.*

*Taylor has not sued any "John Doe" defendants in this lawsuit to preserve a "Bivens" action against them. Therefore, on the face of the pleadings, the only defendant is the IRS (or the United States "acting as" the IRS) itself. Under these circumstances, Mr. Taylor's asserted inability to identify individual defendants does not present a genuine issue of material fact as to whether a "Bivens" claim can be asserted against the agency which would preclude judgment on the pleadings. National Car Rental, 991 F.2d at 428. The only question properly before the court is whether a "Bivens" claim can be asserted against the named defendant. That question is a question of law, not one of fact.*

## B. The "Bivens" Claim

Mr. Taylor asserts that he has a *"Bivens"* claim in this lawsuit, but he has named only the IRS, or the United States "acting as" the IRS, as a defendant. He has not preserved any action against individual IRS agents by naming "John Doe" defendants. *See Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir.1994) (plaintiff failed to preserve § 1983 claim against individuals he was unable to identify at the time of pleading by failing to name "John Doe" defendants). Therefore, the court will consider only whether Mr. Taylor may assert a *"Bivens"* claim against the IRS or the United States, and will not reach the question the IRS invites the court to consider, which is whether any individual IRS official, if named, would be entitled to qualified immunity. Such a further inquiry, it seems to the court, would clearly stray into the territory of a forbidden "advisory opinion."

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971), the United States Supreme Court authorized a direct cause of action for damages against federal officials based upon a deprivation of constitutional rights. *See also Fuller v. Secretary of Defense of the U.S.*, 30 F.3d 86, 88 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 583, 130 L.Ed.2d 497 (1994); *Krueger v. Lyng*, 927 F.2d 1050, 1053 (8th Cir.1991). A *"Bivens"* action is sometimes referred to as a federal law analogue to an action under 42 U.S.C. § 1983. *Vennes v. An Unknown Number of Unidentified Agents of the U.S.*, 26 F.3d 1448, 1452 (8th Cir.1994) (*"Bivens"* action against IRS *agents*, not IRS), *cert. denied,* — U.S. —, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). In *Bivens*, the Court specified two exceptions to the availability of a direct cause of action for damages: where Congress has provided an alternative remedy, or where there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Krueger*, 927 F.2d at 1053 (citing *Bivens*, 403 U.S. at 396–97, 91 S.Ct. at 2004–05). Either or both of these exceptions may obtain here barring Taylor's *"Bivens"* claim, but the court need not decide whether either exception applies.

Instead, the court finds that a *"Bivens"* claim simply cannot be mounted against the only named defendant. The Eighth Circuit Court of Appeals has repeatedly held that *"Bivens"* actions are unavailable against either the United States or one of its agencies, because of sovereign immunity. *Schutterle v. United States*, 74 F.3d 846, 846–48 (8th Cir.1996); *Phelps v. U.S. Fed. Gov't*, 15 F.3d 735, 739 (8th Cir.1994), *cert. denied,* — U.S. —, 114 S.Ct. 2118, 128 L.Ed.2d 676 (1994); *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). Thus, "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief" on his *"Bivens"* claim against this defendant. *Westcott*, 901 F.2d at 1488. Therefore, defendant is entitled to judgment on the pleadings as to the *"Bivens"* claim.

## C. The Constitutionality Of 26 U.S.C. § 6103

### 1. The statute in question

As the court observed in its summary judgment ruling, *Taylor*, 186 B.R. at 449, section 7601 of Title 26 of the United States Code provides that the IRS is obligated to "inquire after and concerning all persons ... who may be liable to pay any internal revenue tax...." 26 U.S.C. § 7601. This provision gives the IRS "expansive information-gathering authority." *United States v. Arthur Young & Co.*, 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); *Speck v. United States*, 59 F.3d 106, 108 (9th Cir.1995). However, the IRS recognizes its obligation to respect the rights of taxpayers, *Diamond v. United States*, 944 F.2d 431, 434 (8th Cir. 1991), and Congress has provided for the confidentiality of the vast amount of information the IRS obtains about individual taxpayers by enacting statutory provisions that prohibit the "unnecessary" disclosure of "return information." *See* 26 U.S.C. § 6103; *Huckaby v. United States Dep't of Treasury, Internal Revenue Serv.*, 794 F.2d 1041, 1046 (5th Cir.1986) ("Section 6103 forbids the disclosure of return information" with certain exceptions).

More specifically, § 6103 provides, in pertinent part, as follows:

> *Returns and return information* with respect to taxes imposed by chapter[ ] 1 ... shall be open to inspection by, or disclosure to, any State agency, body, or commission, or its legal representative, which is charged under the laws of such State with responsibility for the administration of State tax laws *for the purpose of, and only to the extent necessary in, the administration of such laws,* including any procedures with respect to locating any person who may be entitled to a refund. Such inspection shall be permitted, or such disclosure made, only upon *written request* by the head of such agency, body, or commission, and only to the representatives of such agency, body, or commission designated in such written request as individuals who are to inspect or to receive the returns or return information on behalf of such agency, body, or commission. . . .

26 U.S.C. § 6103(d) (emphasis added); *Long v. United States,* 972 F.2d 1174, 1178 (10th Cir.1992) (§ 6103 "permits disclosure by the IRS to state agencies under certain conditions" identified in the statute as including a "written request" from a proper agent of the state); *Huckaby,* 794 F.2d at 1046 (§ 6103(d) provides exception for the IRS to disclose return information to state agencies upon a written request from the head of a state revenue agency). It is the provisions of § 6103 permitting disclosure of taxpayer information that Mr. Taylor appears to challenge as unconstitutionally invading his right to privacy.

The Supreme Court considered the scope of § 6103's provisions in *Church of Scientology of Cal. v. I.R.S.,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987). The court observed that the statute protects from disclosure tax returns themselves as well as providing "an elaborate description of the [other] sorts of information related to returns that [the IRS] is compelled to keep confidential." *Id.* at 14–15, 108 S.Ct. at 274 (citing §§ 6103(b)(1) & (2)). Furthermore,

> [s]ubsections (c) through (o) of § 6103 set forth various exceptions to the general rule that returns and return information are confidential and not to be disclosed. These subsections provide that in some circumstances, and with special safeguards, returns and return information can be made available to congressional committees, the President, state tax officials, and other federal agencies.

*Id.* at 15, 108 S.Ct. at 275. The Court concluded that, in passing the statute, "Congress did not intend the statute to allow the disclosure of otherwise confidential return information merely by the redaction of identifying details," *id.* at 16, 108 S.Ct. at 275, and also noted that "if § 6103 forbids the disclosure of material, it may not be produced in response to a request under the [Freedom of Information Act]." *Id.* at 11, 108 S.Ct. at 273. A companion provision provides a cause of action against the United States, but not against individual agents of the IRS, for violation of the provisions of § 6103. 26 U.S.C. § 7431; *Diamond,* 944 F.2d at 433 & 435; *see also Smith v. United States,* 964 F.2d 630, 632 (7th Cir.1992) (§ 7431 cause of action is against the United States), *cert. denied,* 506 U.S. 1067, 113 S.Ct. 1015, 122 L.Ed.2d 162 (1993); *Mid–South Music Corp. v. Kolak,* 756 F.2d 23, 25 (6th Cir.1984) (in action for alleged violation of non-disclosure provisions of § 6103 brought pursuant to § 7431(a)(1), "the only proper defendant to such a suit is the United States, and that no claim is stated against the individual defendants for such a statutory violation."); *Jones v. United States,* 869 F.Supp. 747, 753 (D.Neb.1994) ("Section 6103 establishes the antidisclosure scheme which protects "returns" and "return information," but 26 U.S.C. § 7431 (1989) provides the civil remedy.").

■ Mr. Taylor challenges the constitutionality of § 6103 on the grounds that it purports to include states as a portion of "tax administration," violating principles of federalism, and because it allows disclosure of information obtained by the IRS to states in violation of a constitutionally protected, fundamental expectation of privacy, which includes financial matters. The IRS has moved for judgment on the pleadings on this constitutional challenge, on the ground that "[t]he general rule is that information gath-

ered by the government, by its very nature, is public information, since its gathering has been financed by the public." The IRS offers no authority whatsoever in support of such a sweeping "general rule," and the court considers the argument specious. The fact that information may have been gathered at public expense simply does not mean that the information gathered is subject to no privacy or confidentiality rights! Furthermore, one of the few cases in which a constitutional challenge to § 6103 was made, albeit a different sort of challenge from the one mounted here, recognized that the fact that the government had collected tax information in order to pursue criminal prosecution did not make such information generally available to the public. *Calder v. I.R.S.*, 890 F.2d 781, 783–84 (5th Cir.1989). The IRS's argument that tax information is "public information" not subject to any right of privacy simply cannot stand.

Perhaps better founded, though still missing the mark of a coherent statement of a defense to a constitutionality challenge, is the IRS's remaining argument, which, in its entirety, runs as follows:

> Congress, through statutes like 26 U.S.C. § 6103, has deemed that certain types of information should not be made public. *See, e.g.*, 5 U.S.C. § 552(b); 5 U.S.C. § 522a(b), (j). There is no provision of the Constitution, however, which provides that information gathered by the government must be kept confidential. Given the sensitive nature of tax returns and return information and the dangers of possible misuse, Congress has determined as a matter of policy that such information should be kept confidential. 26 U.S.C. § 6103(a). Congress has also authorized exceptions when return information may be disclosed. *See* 26 U.S.C. § 6103(c)–(1). Both determinations are well within the purview of Congress, and plaintiff's assertion that section 6103 is unconstitutional is without merit.

Memorandum In Support Of United States Of America's Motion to Dismiss, p. 5. This argument at least attempts to demonstrate a proper balancing between governmental and private interests that is the essential inquiry in a constitutionality challenge to a statute.

### 2. The appropriate constitutionality analysis

■■■■ Mr. Taylor asserts that § 6103 is unconstitutional principally because it violates his purported fundamental right to financial privacy. Whether or not a right is "fundamental" dictates the appropriate level of constitutional scrutiny for evaluating a statute that is asserted to impinge upon that right. *See, e.g., Henne v. Wright*, 904 F.2d 1208, 1213 (8th Cir.1990), *cert. denied*, 498 U.S. 1032, 111 S.Ct. 692, 112 L.Ed.2d 682 (1991). Thus,

> if the statute significantly infringes a right deemed fundamental under the [fifth or] fourteenth amendment right of privacy then we must rigorously scrutinize the asserted justifications for the statute. *See Zablocki v. Redhail*, 434 U.S. 374, 383, 98 S.Ct. 673, 679, 54 L.Ed.2d 618 (1978); *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1176 (5th Cir.1979). Otherwise, we analyze the statute under the highly deferential rational basis standard of review applicable to most economic and social legislation challenged under the fourteenth amendment. *See Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 486–88, 75 S.Ct. 461, 463–64, 99 L.Ed. 563 (1955); *Scott v. City of Sioux City*, 736 F.2d 1207, 1216 (8th Cir.1984), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985).

*Henne*, 904 F.2d at 1213–14. In determining whether the right in question here is "fundamental," and thus strict scrutiny must be applied to the statute purportedly infringing that right, the court notes that there is no "all-encompassing 'right of privacy'" that is fundamental, although the Supreme Court has for some time recognized certain, specific privacy rights as "fundamental." *Planned Parenthood v. Casey*, 505 U.S. 833, 951–52, 112 S.Ct. 2791, 2859, 120 L.Ed.2d 674 (1992) (plurality opinion of Rehnquist, C.J.).

Unlike life, liberty, and property rights, specifically identified in the Constitution, the right to privacy is not enumerated. In *Henne*, the Eighth Circuit Court of Appeals explained the court's task in determining

whether a right not enumerated in the Constitution qualifies as fundamental:

> [W]e ask whether the right is "deeply rooted in this Nation's history and tradition," *Moore v. City of East Cleveland,* 431 U.S. [494,] 503, 97 S.Ct. [1932,] 1938 [52 L.Ed.2d 531] [ (1977) ]. We proceed cautiously in this area of the law, ever mindful that the judiciary "is the most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or even the design of the Constitution." *Id.* at 544, 97 S.Ct. at 1958 (White, J., dissenting).

*Henne,* 904 F.2d at 1214. The court in *Henne* noted, that as a result of the required careful inquiry, "[a] long line of Supreme Court cases ha[s] established that 'liberty' under the fourteenth amendment encompasses a right of personal privacy *to make certain decisions* free from intrusive governmental regulation *absent compelling justification.*" *Id.* (citing cases). The fundamental privacy rights identified in this long line of cases most often involve the rights to make decisions about familial or sexual relations and decisions pertaining to procreation. *See, e.g., Henne,* 904 F.2d at 1214 (citing cases).

However, Mr. Taylor here asserts a different kind of right to privacy, privacy from disclosure of confidential personal financial information, and asserts that this privacy right is also "fundamental." In *Alexander v. Peffer,* 993 F.2d 1348 (8th Cir.1993), the Eighth Circuit Court of Appeals recognized that there are both "confidentiality" and "autonomy" branches of the right to privacy, the latter of which pertains to the familial, sexual, and procreative privacy rights discussed above, and the second of which pertains to rights like those Mr. Taylor asserts are violated by § 6103 prohibiting disclosure of certain personal information. *Alexander,* 993 F.2d at 1349–50 (citing *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), as distinguishing between "the right to make important decisions such as marriage, procreation, and child rearing, without the interference of government" and "the right to privacy ... in an individual's interest in avoiding disclosures of personal matters");

*see also Barry v. City of New York,* 712 F.2d 1554, 1558–59 (2d Cir.) (also recognizing "autonomy" and "confidentiality" strands of right to privacy, citing *Whalen* ), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983); *Plante v. Gonzalez,* 575 F.2d 1119, 1128 (5th Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979) (same characterization). The court seemed to distinguish further between "disclosures [that] involved matters deemed to be fundamental rights [or] address[ed] highly personal medical or financial information," and more "trivial" confidentiality issues, holding that the "rights" in question in the case before it, purportedly impinged by improper display of an inmate's nude photographs of his wife, did not rise to the level of "constitutional dimensions." *Alexander,* 993 F.2d at 1351.

Thus, it appears from *Alexander* that, although the privacy of "personal financial information" is not a "fundamental" privacy right, the privacy of such information is entitled to some level of constitutional protection. *Id.* That conclusion was explicitly stated in *Plante v. Gonzalez,* 575 F.2d 1119 (5th Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979), in which the Fifth Circuit Court of Appeals concluded that personal financial affairs are protected by a right of privacy "derived from the shadows of the Bill of Rights," but that such rights are not "fundamental." *Plante,* 575 F.2d at 1123 & 1132–33 (although not "fundamental," the court found that "[f]inancial privacy is a matter of serious concern, deserving of strong protection"). The court in *Plante* observed that the Supreme Court had three times prior to its decision rejected for want of a substantial federal question cases raising the question of a fundamental privacy right in financial disclosure cases. *Id.* at 1134. The court concluded that

> [s]ubjecting financial disclosure laws to the same [strict] scrutiny accorded laws impinging on autonomy rights, such as marriage, contraception, and abortion, would draw into question many common forms of regulation, involving disclosure to the public and disclosure to governmental bodies.

*Id.* at 1134 & n. 24 (noting that the government requires many kinds of financial disclosure from its citizens, none of which are well-loved, but all of which are widely-accepted). This court agrees that there is nothing so "deeply rooted" about a right to financial privacy as to transform it into a "fundamental right," *Henne,* 904 F.2d at 1213–14, in a society in which persons routinely submit to disclosure of financial information to obtain loans or credit, housing, or employment, or to comply with state or federal revenue, taxation, business regulation, or licensing laws.

▇▇▇▇ Because "financial" privacy does not involve a "fundamental" right, but nonetheless does involve a recognized privacy right entitled to some constitutional protection, the question is the degree of scrutiny to be given laws that impinge on that right. *Henne,* 904 F.2d at 1213–14. The court finds that the few cases to consider financial privacy under the "confidentiality" strand of the right to privacy have applied "some form of intermediate scrutiny or balancing approach." *Barry,* 712 F.2d at 1559; *see also Eisenbud v. Suffolk County,* 841 F.2d 42, 45–46 (2d Cir.1988) (approving application of "intermediate" or "heightened" scrutiny to right of financial privacy for either a due process or equal protection claim, citing *Barry* ); *Plante,* 575 F.2d at 1134–36 (balancing test, balancing interests served against interests hindered, is appropriate test of law allegedly impinging right to financial privacy to protect the individual's "serious interest" in financial privacy). "Intermediate scrutiny" in turn means upholding the law if it is "substantially related" to an "important," "substantial," or "legitimate" governmental interest. *Eisenbud,* 841 F.2d at 45 ("important" or "substantial" governmental interest); *Barry,* 712 F.2d at 1560 ("substantial" governmental interest). For example, in *Eisenbud,* the court concluded that the substantial interest requirement was met where the government sought, through financial disclosures, to combat corruption and conflicts of interest among governmental employees, and

the substantial relationship to that interest was shown where the disclosure law was "narrowly target[ed] and focus[ed] ... upon individuals who are most vulnerable to financial conflicts and pressures." *Eisenbud,* 841 F.2d at 46. The Second Circuit Court of Appeals concluded that

> an intermediate standard of review [for laws impinging financial privacy rights] seems in keeping both with the Supreme Court's reluctance to recognize new fundamental interests requiring a high degree of scrutiny for alleged infringements, and the Court's recognition that some form of scrutiny beyond rational relation is necessary to safeguard the confidentiality interest.

*Barry,* 712 F.2d at 1559. This court agrees that, while not "fundamental," financial privacy rights should invoke "intermediate" or "heightened" scrutiny of laws infringing those rights, because of the serious regard given financial privacy by individuals, courts, and legislators.

### 3. The constitutionality of § 6103

▇▇▇ The court has found only two, and the parties no, cases that directly consider the constitutionality of 26 U.S.C. § 6103, and one of those cases is inapposite to the constitutionality question presented here,[2] while the other is unpublished. In the unpublished decision, the United States District Court for the District of Connecticut concluded that the disclosure provisions of § 6103 were "a minimal intrusion on plaintiff's right to privacy." *Loomis v. I.R.S.,* 1981 WL 1767, *3 (D.Conn. Mar. 17, 1981) (unpublished decision). The court wrote,

> Information given to a federal tax authority was transmitted to a state tax authority, as provided by the statute. The material conveyed was not made public, and such conveyance was clearly intended by the Congress. *See Gorod v. Internal Revenue Service,* 43 Am.Fed.Tax Rep. 79–678, 1979 WL 1301 (D.Mass.1979). The plaintiffs have failed to demonstrate the slightest constitutional infirmity in this statute, and

**2.** In *Calder v. I.R.S.,* 890 F.2d 781 (5th Cir.1989), the Fifth Circuit Court of Appeals considered a constitutionality challenge to 26 U.S.C. § 6103 that might be described as the "obverse" of the present challenge: The plaintiff, a college profes-

sor researching federal crime control policies, challenged the constitutionality of § 6103 on the ground that it unconstitutionally *limited* his access to information held by an administrative agency, specifically the tax records of Al Capone.

the Court is unable to discover any such defect. *Loomis*, 1981 WL 1767, *3 (unpublished decision). Consequently, the court denied the plaintiffs' request for an injunction based on their "right to privacy" claim. *Id.* at *3 n. 1.

Mr. Taylor's challenge to the constitutionality of § 6103 is, at the very least, ironic, because one of the purposes identified by Congress in enacting that statutory provision, as part of the Tax Reform Act of 1976, was to "strengthen the rights of taxpayers." H.R.Rep. No. 658, 94th Cong., 1st Sess. 7 (1975), *reprinted in* 1976 U.S.CODE CONG. & ADMIN.NEWS 2897, 2902; S.Rep. No. 938, 94th Cong., 2d Sess., pt. 2, at 19, *reprinted in* 1976 U.S.CODE CONG. & ADMIN.NEWS at 3455; *Church of Scientology of Cal. v. I.R.S.*, 484 U.S. 9, 16, 108 S.Ct. 271, 275, 98 L.Ed.2d 228 (the "primary purpose" of § 6103 was "limiting access to tax filings," and "[o]ne of the major purposes in revising § 6103 was to tighten the restriction on the use of return information by entities other than [the IRS]."); *Diamond*, 944 F.2d at 434. However, the interest of the government that must be shown to be "substantial" here is not the interest in limiting disclosures, but the government's interest in making the permitted disclosures. That interest generally comes under the heading of facilitating "tax administration" of the state and the federal revenue services. 26 U.S.C. § 6103(d).

The court has no hesitation in concluding that facilitating "tax administration" is at least a "substantial" governmental interest. *Eisenbud*, 841 F.2d at 45 ("important" or "substantial" governmental interest); *Barry*, 712 F.2d at 1560 ("substantial" governmental interest). The state and federal income tax systems depend upon voluntary reporting of income and filing of tax returns, *Diamond*, 944 F.2d at 434; *United States v. Eklund*, 733 F.2d 1287, 1294 (8th Cir.1984), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); *United States v. Flagg*, 634 F.2d 1087, 1091 (8th Cir.1980), *cert. denied*, 451 U.S. 909, 101 S.Ct. 1977, 68 L.Ed.2d 297 (1981); *United States v. Ojala*, 544 F.2d 940, 945 (8th Cir.1976); indeed, plaintiff concedes that taxation provides the "lifeblood" of the state and federal governments. The court also recognizes that the potential for fraud, refusals to file, and simply erroneous filings in such a voluntary system is substantial. The Supreme Court has noted the government's substantial interest in orderly tax collection and administration. *See McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dep't of Business Reg. of Florida*, 496 U.S. 18, 43–45, 110 S.Ct. 2238, 2253–54, 110 L.Ed.2d 17 (1990).

Turning to whether § 6103 is "substantially related" to this substantial governmental interest, *Eisenbud*, 841 F.2d at 45; *Barry*, 712 F.2d at 1560, the court concludes that § 6103 is also "narrowly target[ed] and focus[ed]" on disclosure only of appropriate information and only to appropriate persons for appropriate purposes. *Eisenbud*, 841 F.2d at 46. The provisions of the statute "provide that in some circumstances, and with special safeguards, returns and return information can be made available" to specified officers and agencies, each of which has a legitimate reason for receiving such information. *Church of Scientology*, 484 U.S. at 15, 108 S.Ct. at 274. There is no general disclosure of information to the public through § 6103. Indeed, § 6103 forbids disclosure of information to the public pursuant to the Freedom of Information Act. *Id.* at 11, 108 S.Ct. at 272. This court concurs with the conclusion of the district court in *Loomis* that the statute provides only a minimal intrusion on the plaintiff's right to privacy. *Loomis*, 1981 WL 1767, *3 (unpublished decision). Mr. Taylor's claim of unconstitutionality based on violation of his right to financial privacy cannot be sustained as a matter of law, and the defendant is entitled to judgment on the pleadings on that claim.

 The court has examined Mr. Taylor's "federalism" and "state sovereignty" challenges to the constitutionality of § 6103, and finds them frivolous. The statute does not in any way allow the federal government to impinge upon the proper exercise of state power, nor does it create any improper relationship between state and federal agencies. Defendant is therefore also entitled to judgment on the pleadings on Mr. Taylor's challenge to the constitutionality of § 6103 based

on "federalism" or "state sovereignty" grounds.

### III. CONCLUSION

The court concludes that the defendant is entitled to judgment on the pleadings on Mr. Taylor's remaining claims. Mr. Taylor has named no proper defendant for his *"Bivens"* claim, because neither the United States nor one of its agencies may be sued on such a claim. Furthermore, Mr. Taylor's constitutional challenges to 26 U.S.C. § 6103 are meritless. The statute is substantially related to a substantial governmental purpose of tax administration and collection. It permits disclosures only to appropriate persons under appropriate conditions, reflecting Congress's intention to strengthen, not weaken, protection of the confidentiality rights of taxpayers. Nowhere does the statute permit disclosure of confidential information to the public at large. Defendant's November 3, 1995, motion is **granted,** and this matter is therefore **dismissed** in its entirety.

**IT IS SO ORDERED.**